FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

JUN 10 2002

[signature]
CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

EDDIE SANDOVAL,

Plaintiff,

vs.                                                Civil No. 00-1056-WJ/LCS-ACE

UNITED STATES OF AMERICA,
DON WEAVER, JR., and
RAUL GUARDADO

Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING
## THE UNITED STATES' MOTION FOR SUMMARY JUDGMENT

THIS MATTER comes before the Court on the United States' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (Doc. 82) filed on January 31, 2002. Having considered the pleadings of record, and having heard the parties on May 22, 2002, the Motion is granted as a motion for summary judgment pursuant to Rule 56 and not a motion to dismiss pursuant to Rule 12(b)(6) since the Court considered matters outside the specific pleadings by reviewing the various exhibits which are attached to the submissions.

**FINDINGS OF FACT.**

For its findings of fact, the Court incorporates section 1 of the Reply memorandum filed by the United States (Doc. 108).

1. On May 17, 1998, Plaintiff was a teenager on a Greyhound bus traveling from El Paso to Albuquerque.

2. Plaintiff had entered the United States at El Paso.

3. At the Border Patrol fixed checkpoint on I-25 north of Las Cruces, at about 2:00 am the Border Patrol boarded the Greyhound bus.



4. Border Patrol Agent Weaver had Plaintiff step off the bus for further questioning.

5. Physical force was not used to get Plaintiff to step off the bus.

6. In his thirty years of Border Patrol experience, Agent Rhodes has never seen or known of an Agent to physically drag someone off of a commercial bus. (Defendant Rhodes was dismissed from this action with prejudice per the Stipulation of Dismissal filed on February 11, 2002 (Doc. 96), and the caption was modified at that time so as to no longer include Defendant Rhodes.)

7. Plaintiff was not handcuffed at any time during this incident.

8. Plaintiff was not handcuffed since a juvenile would not normally be handcuffed in this type of situation.

9. Agent Weaver had Plaintiff accompany him into the checkpoint trailer for further questioning because inside the checkpoint trailer was Border Patrol Agent Guardado, who was Agent Weaver's field training officer and a more fluent Spanish-speaker.

10. Plaintiff accepted a voluntary return to Mexico and chose not to appear before a judge.

11. Plaintiff signed Form I-215B (his statement to the Border Patrol), and Agent Weaver and Agent Guardado also signed as witnesses.

12. The Border Patrol statement that Plaintiff signed on May 17, 1998, states: "My true and correct name is Eric ...."

13. Agent Weaver grabbed Plaintiff's arm and forcibly let him into a holding cell at the checkpoint trailer until the Border Patrol bus from El Paso could pick him up.

14. Plaintiff was still in the holding cell when Agents Weaver and Guardado went off duty at 7 am. He was picked up by the Border Patrol bus and taken to El Paso after their shift was

over.

15. The Border Patrol would not have returned to Plaintiff the documents that were part of his identification as "Eddie".

16. It is common for the Border Patrol to catch people using false or counterfeit documents, or imposters using other people's identification. Such false or counterfeit documents, or documents used by imposters, are kept by the Border Patrol.

17. Agent Guardado told someone on the incoming day shift that when Plaintiff was picked up by the Border Patrol bus from El Paso to return to Plaintiff the rest of the documents that were not used for Plaintiff's identification.

18. On May 17, 1998, Plaintiff admits that there was confusion as to his name and identity amongst the various documents that he had at that time.

19. The birth certificate for Plaintiff at the time of this incident states that Plaintiff's first name is Eddie, that he was born in 1982, and the birth certificate was registered in 1984.

20. The baptism certificate for Plaintiff at the time of this incident states that Plaintiff's first name is Eric.

21. The social security card for Plaintiff at the time of this incident states that Plaintiff's first name is Eddie.

22. In May of 1998 the Border Patrol Agents acted in accordance with Plaintiff's own admission that he was not a U.S. citizen.

23. Since this incident, Plaintiff has replaced the birth certificate and social security card that the Border Patrol kept.

24. Since this incident, Plaintiff replaced the baptism certificate that the Border Patrol

kept, but this time with the certificate stating "Eddie" instead of "Eric" to match Plaintiff's other papers.

25. After this incident, Plaintiff easily obtained the vaccinations required to enter school in Albuquerque, since he claims that his vaccination records were amongst the papers that the Border Patrol did not return to him.

26. At this time, Plaintiff is not missing any of the documents that he claims were taken by the Border Patrol and not returned to him.

**CONCLUSIONS OF LAW.**

    **A.    FALSE ARREST AND FALSE IMPRISONMENT.**

1. The Border Patrol was conducting a valid search for illegal aliens or those suspected of being illegal aliens at a permanent checkpoint that is a functional equivalent of a border.

2. At a functional equivalent of a border, the Border Patrol may conduct routine searches for illegal aliens without probable cause, a warrant, or reasonable or individualized suspicion.

3. The Border Patrol acted within its statutory authority during the incident.

4. The Border Patrol lawfully detained plaintiff based on the reasonable suspicions from the combination of plaintiff's nervousness, refusal to answer questions, and a discrepancy in the name appearing on the documentation that he produced. Therefore, the United States is entitled to summary judgment on the false imprisonment and false arrest claims.

    **B.    CONVERSION.**

5. As to the claim of conversion, the Court concludes that the plaintiff is no longer missing any of the documents that he claims the Border Patrol converted. The plaintiff has obtained

4

replacement or new documentation from the United States or the appropriate governmental agency that allows him to travel back and forth. To the extent that there has been a conversion of these documents, the Court is of the opinion that plaintiff has been made whole and it would serve no purpose to have a jury trial on the conversion claim when all the documents that were alleged to have been converted have been replaced or other documentation has been issued by the United States that allows the plaintiff to go back and forth between Mexico and the United States. Therefore, summary judgment will be granted on the claim of conversion.

### C. ASSAULT AND BATTERY.

6. There is no dispute that plaintiff was not dragged off the bus or handcuffed during the incident. The agents never shot at the plaintiff or even drew their weapons against him. They were wearing weapons, but they are certified law enforcement officers. They are authorized and do wear their weapons just as an FBI agent or a sheriff's deputy or state police officer or a local police officer or uniformed police officer would wear a weapon. Plaintiff did bring up the threat of being raped in his allegations, but he never alleged that the agents threatened to rape him or to brutalize him. There was a reference that the plaintiff made to having read an article in the newspaper about INS rapes or beatings, but none of that rises to the level that would justify or support a claim for assault and battery under the Federal Tort Claims Act.

7. As for the portion of the plaintiff's claim for assault and battery regarding being put into the holding cell or being grabbed into the holding cell, I will note that it is undisputed that one of the border agents grabbed the plaintiff's arm and escorted him to the cell. But I will conclude as a matter of law that that does not rise to the level of assault and battery, that the minimal amount of force that was used was justified force according to the Border Patrol in connection with placing any

5

individual in detention.

8. As for the allegation of the plaintiff that the holding cell was cold for part of the period that he was detained, I will conclude as a matter of law that that does not rise to the level of an assault or battery under the Federal Tort Claims Act.

9. I will note that it is disputed regarding the allegations that there were insults made by the Border Patrol agents against the plaintiff. The plaintiff alleges that he was called names, there were some racial or ethnic slurs. Again, that is a disputed fact, but in my view, assuming for argument sake that those agents made those comments, that would not rise to the level of an assault and battery claim under the Federal Tort Claims Act. Therefore, there is no material fact that would support the plaintiff's claim for assault and battery, and the assault and battery claims under the Federal Tort Claims Act likewise should be dismissed and summary judgment entered in favor of the United States.

IT IS THEREFORE ORDERED that the United States' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment is hereby GRANTED as a motion for summary judgment, and that Count I of the Amended Complaint (Doc. 5) is dismissed with prejudice in its entirety.

It is so ordered this 10th day of June, 2002.

WILLIAM P. JOHNSON
United States District Judge

Submitted by:

DAVID C. IGLESIAS
United States Attorney

CYNTHIA L. WEISMAN
Assistant United States Attorney
P.O. Box 607
Albuquerque, New Mexico 87103
505-346-7274

Approved as to form by:

KENNEDY & HAN

_Telephonic Approval on 6/7/02_
Paul J. Kennedy
1122 Central Avenue S.W.
Albuquerque, New Mexico 87102
Tel: 505-842-8662

N:\CWeisman\Cases-New\Sandoval\court\opinion and order usa torts.wpd